UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUSAN MICHELE DUKARSKI,

    Plaintiff,    CIVIL ACTION NO. 12-cv-14921

  vs.

        DISTRICT JUDGE SEAN F. COX

COMMISSIONER OF    MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

   Plaintiff Susan Dukarski seeks judicial review of Defendant the Commissioner of Society Security's determination that she is not entitled to social security benefits for her physical impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 9) and Defendant's Motion for Summary Judgment (docket no. 11). The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 2.) The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation pursuant to Eastern district of Michigan Local Rule 7.1(f)(2).

## I.  RECOMMENDATION:

   This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 9) be DENIED and that Defendant's Motion for Summary Judgment (docket no. 11) be GRANTED.

## II.  PROCEDURAL HISTORY:

Plaintiff filed an application for Disability Insurance Benefits with a protective filing date of September 15, 2009, alleging that she had been disabled since January 1, 1999, due to open angle glaucoma. (*See* TR 19.) The Social Security Administration denied benefits. (*See* TR 19.) Plaintiff requested a *de novo* hearing, which was held on January 12, 2011, before Administrative Law Judge (ALJ) Regina Sobrino, who subsequently found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy. (TR 20-26.) The Appeals Council declined to review the ALJ's decision (TR 1), and Plaintiff commenced this action for judicial review. The parties then filed their instant Motions.

## III.   PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE, AND VOCATIONAL EXPERT TESTIMONY

### A.   Plaintiff's Testimony

Plaintiff was 57 years old at the time of the administrative hearing and 45 years old at the time of alleged onset. (*See* TR 34.) At the time of the hearing and at the time of her alleged onset, Plaintiff lived with her husband. (TR 34.) She testified that she had finished high school, but she did not have a college degree. (TR 34.) Plaintiff has previously worked as a crossing guard and part time as a caregiver for her grandson. (TR 35-36.) Plaintiff testified that she had not performed any substantial work since January 1, 1999, due to severe headaches and dizziness brought on by blurry eyesight. (TR 36.)

Plaintiff testified that her eye problems began in the early 1990s and that she was diagnosed with open angle glaucoma, but she indicated that her headaches and the dizziness started in or around 1995. (TR 37.) Plaintiff told the ALJ that between 1999 and 2002, she had trouble standing, walking, and sitting due to her dizziness. (TR 43-45.) She stated that she would run into things or get severe headaches. (TR 36, 44.) She testified that she could only sit for about an hour before she

2

would have to stand up.  (TR 44.)   She also added that she could only lift about 25 pounds.  (TR 45.) She further testified that she had trouble bending and crouching due to dizziness.  (TR 45-46.) Plaintiff noted that she could not read road signs and hadn't been able to do so since about 1995. (TR 52.)

Plaintiff testified that to relieve her symptoms, she would have to lay down at least five days a week for two to three hours.  (TR 46.)  Additionally, Plaintiff testified that her doctors prescribed Ibuprofin for her headaches, Meclizine for her dizziness, and a variety of eye drops for her glaucoma, which changed throughout the course of her treatment.  (TR 37, 45.)  Plaintiff also testified that she had three separate eye surgeries and that she treated with several specialists, including a glaucoma specialist.  (TR 38.)  She added, however, that the surgeries actually made her eyesight worse.  (TR 50.)

Plaintiff told the ALJ that because of her dizziness, her husband did most of the cooking, cleaning, and laundry; he also did all of the household shopping.  (TR 40.)  Plaintiff testified that she did not regularly visit family or friends and that although she loved to read, she had not been able to do so since around 1994.  (TR 40.)  She was, however, able to use the computer between 1999 and 2002 as long as her husband set the print to a very large font size.  (TR 40.)  She further testified that she and her husband have a 50" television, but she cannot see it from even five feet away.  (TR 41.)  Plaintiff also told the ALJ that although she has a driver's license, she has not actively driven since 1998, except for an emergency situation in 1999; she testified that she failed an eye exam at the Secretary of State's office, but she was given a license anyway because she was being treated for glaucoma.  (TR 41-42.)

**B.     Medical Record**

3

Defendant asserts that "[t]he ALJ offers a full discussion of the relevant evidence in this case" and does not set forth any statement of facts. (Docket no. 11 at 7.) Additionally, while Plaintiff sets forth a brief procedural history and discusses the ALJ's basis for denying her benefits, Plaintiff does not discuss her medical record. (Docket no. 9 at 5.) Therefore, because neither Defendant not Plaintiff have supplemented the ALJ's account of Plaintiff's medical record, the Court hereby incorporates by reference the medical record as set forth in the ALJ's opinion. (TR 22-24.) The Court has, however, conducted an independent review of Plaintiffs' medical record and will incorporate comments and citations as necessary throughout this Report and Recommendation.

**C.      The Vocational Expert**

The ALJ asked the VE to consider a hypothetical person of Plaintiff's age, education, and vocational experience who was limited to performing no more than light work. (TR 55.) The ALJ then asked the VE to assume that this individual could not climb ladders or stairs and was limited to frequent handling, fingering, and reaching. (TR 55.) The ALJ added that the individual should not be exposed to hazards, and the person should not be required to drive as a work duty. (TR 55.) Finally, the ALJ added that the individual could not handle small objects and could not read small print. (TR 55.) The VE testified that such a person could perform work in the region as a stock clerk (2,700 positions), a janitor (6,900 positions), or a vehicle cleaner (3,700 positions). (TR 55.)

The ALJ then asked the VE if a person with such limitations could perform any sedentary work. (TR 56.) The VE testified that such a person could not perform sedentary work because sedentary jobs require an individual to handle small objects or read small print. (TR 56-57.) The ALJ then asked whether such a person, limited to light work, who was also not able to flex, extend, or rotate her neck more than occasionally would be precluded from employment. (TR 57.) The VE

4

testified that such a person with that limitation would be unable to perform any jobs in the national or regional economy.  (TR 58.)  Additionally, an the VE testified that any individual who could not perform their job eight hours a day five days a week on a regular basis would be precluded from employment.  (TR 58.)  Plaintiff's attorney was provided an opportunity to cross-examine the VE but did not ask any questions.  (TR 58.)

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity between January 1, 1999, Plaintiff's alleged onset date, and June 30, 2002, Plaintiff's date last insured, and that she suffered from severe chronic open angle glaucoma.  (TR 21.)  The ALJ further found that her impairments did not meet or equal those listed in the Listing of Impairments.  (TR 21.)  The ALJ found, however, that Plaintiff's allegations regarding the extent of her symptoms were not wholly credible; thus, the ALJ found that, through her date last insured, Plaintiff retained the residual function capacity "to perform a full range of work at all exertional levels, but with the following nonexertional limitations: she needed to avoid exposure to hazards; she could not perform work that required handling small objects or reading small print; and she could not drive as a work duty."  (TR 21-24.)  The ALJ then determined, in reliance on the VE's testimony, that Plaintiff was capable of performing a significant number of jobs in the national economy.  (TR 24-25.)  Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from January 1, 1999, through June 30, 2002.  (TR 25.)

## V.    LAW AND ANALYSIS

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether

his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.      Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)      Plaintiff was not presently engaged in substantial gainful employment; and

(2)      Plaintiff suffered from a severe impairment; and

(3)      the impairment met or was medically equal to a "listed impairment;" or

6

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C.     Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a

7

sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).  Plaintiff argues that this matter should be reversed or remanded under sentence 4 because the ALJ "erred as a matter of law in failing to properly evaluate the medical records and opinions of evidence, and thereby, formed an inaccurate hypothetical that did not accurately portray [Plaintiff's] impairments."  (Docket no. 9 at 7.) Although not entirely clear, Plaintiff's motion implicitly asserts that the ALJ (1) failed to consider all of Plaintiff's medical records, (2) failed to give controlling weight to Plaintiff's treating physician's opinion, (3) failed to properly evaluate Plaintiffs' credibility, and (4) failed to consider additional hazards that Plaintiff may have encountered when working any of the jobs that the VE testified she could perform.[1]  (*See* docket no. 9 at 9-11.)

### 1.    The ALJ's Analysis of Plaintiff's Medical Records

There is no dispute that an ALJ is required to evaluate the claimant's entire record when formulating the plaintiff's RFC.  *Webb v. Comm'r*, 368 F.3d 629, 633 (6th Cir. 2004) (citing 20 C.F.R. § 416.920(a)(4)(iv)).   But there is no mandate that the ALJ discuss all of the evidence of

---

[1]To the extent Plaintiff argues that the ALJ erred in the formulation of the hypothetical questions presented to the VE or that the ALJ failed to consider the VE's answer to her second hypothetical, the ALJ is only required to incorporate in her hypothetical those limitations that she finds credible and supported by the record.  *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).  Here, the ALJ presented all of the limitations in Plaintiff's RFC in her first hypothetical question to the VE, and the VE testified that there are jobs available for a person with these limitations. The ALJ's second hypothetical (to which Plaintiff asserts the ALJ should be bound) imposed additional limitations that the ALJ did not ultimately include in Plaintiff's RFC.  Thus, in substance, Plaintiff's motion asserts that the ALJ's RFC is not supported by substantial evidence for the reasons discussed herein.

Additionally, Plaintiff contends that "[t]he mere fact that she did not apply for disability sooner should not act as a barrier to say that her disability has not been present since January 1, 1999 through June 30, 2002."  (Docket no. 9 at 11.)  While Plaintiff is correct as a matter of law, nothing in the ALJ's decision or the hearing transcript suggests that the ALJ even considered Plaintiff's delay in filing for benefits as a factor in finding that Plaintiff was not disabled from 1999 through 2002.

record.  To the contrary, "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."  *Kornecky v. Comm'r*, 167 Fed. Appx. 496, 507-08 (6th Cir. 2006) (quoting *Loral Def. Sys.-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)).

Here, the ALJ reviewed the evidence and concluded that Plaintiff suffered from severe chronic open angle glaucoma.  (TR 21.)  The ALJ then set forth a detailed review of Plaintiffs' medical record when formulating Plaintiff's RFC.  (*See* TR 21-24.)  Specifically, the ALJ considered Plaintiff's surgical records and medical records from Anderson Eye Associates dating from 1999 (noting that records from 1999 were limited) through 2009.  (*See* TR 22-23.)  While the ALJ may not have addressed every piece of evidence in her written decision, there is nothing to suggest that the ALJ did not consider the entire record.  Moreover, Plaintiff does not cite to a single piece of evidence that the ALJ did not discuss; instead, Plaintiff merely relies on her own testimony to contradict the ALJ's conclusions.  (*See* docket no. 9.)  Therefore, Plaintiff's argument fails with regard to this issue.

## 2.    The Medical Opinions of Record

The ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record.  20 C.F.R. § 404.1527(c)(2).  But as Defendant notes, "the record does not include an opinion from a treating or examining source that indicates that, prior to the expiration of Plaintiff's insured status, she was disabled or had limitations significantly different from those included in the ALJ's RFC assessment."  (Docket no. 11 at 11.)  The ALJ even asked Plaintiff's attorney if such an opinion existed:

[ALJ]: [Plaintiff's doctor] hasn't written any kind of description of limitations or

9

functional effects of the eye impairment going back to the period that's in the insured period?  Is that right, he hasn't?

[Plaintiff's Attorney]: Correct.

ALJ: Do you have any other records that you think should be submitted, Mr. Lupisella?

ATTY: No.

(TR 59.)  Moreover, Plaintiff does not suggest that such an opinion exists.  (*See* docket no. 9.) Instead, again, Plaintiff relies on her own testimony to support her alleged limitations from 1999 through 2002.  (*See id.*)  Therefore, the ALJ did not err in this regard.

### 3.    Plaintiff's Credibility

Plaintiff's reliance on her hearing testimony in support of her Motion implies that her foremost assertion is that the ALJ erred when she did not afford Plaintiff's testimony controlling weight.  (*See* docket no. 9.)  "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997). But Credibility assessments are not insulated from judicial review.  Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence.  *Id.*  An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not enough to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'"  *Id.*  "The adjudicator may find all,  only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *See id.*

Plaintiff asserts that the ALJ failed to account for her dizziness and headaches when determining her RFC.  Specifically, Plaintiff argues that she testified that she can only sit for about 60 minutes before she gets a headache; that she needs to lay down in a dark room for several hours a day, that she bumps into things and trips; that she cannot perform simple tasks like cooking cleaning, or doing laundry; and that she cannot bend her knees, crouch down, drive, or flex, extend or twist her neck.[2]   (Docket no. 9 at 9-10.)  Thus, Plaintiff asserts, "[h]ow can a person with documented chronic open angle glaucoma possibly be expected to report to work on a regular basis when the headaches require frequent lying down, on a daily basis, for two or three hours at a time." (*Id.* at 11.)

The ALJ, however, did account for Plaintiff's open angle glaucoma and included in his RFC limitations concerning her visual acuity.  (*See* TR 21.)  Nevertheless, the ALJ also found that Plaintiff's statements regarding her headaches and dizziness (at least during the period of 1999 through 2002) were not credible.  (TR 22-23.)  In reaching this conclusion, the ALJ discussed Plaintiff's subjective complaints, and she considered Plaintiff's medical records.   The ALJ noted that in March 2001, Plaintiff's "near vision had decreased, but her distance vision was 'OK, no complaints.'" (TR 22.)  She further noted that on January 24, 2002, Plaintiff "had full visual fields," and that she was ordered to continue on the same medications.  (TR 23.)  And on May 23, 2002, Plaintiff still had full visual fields and "no noticeable visual acuity changes."  (TR 23.)

---

[2]Plaintiff also claims that she testified "that she would have trouble lifting twenty-five pounds for fear of dropping it due to poor vision, headaches, or dizziness."  (Docket no. 9 at 10.) This contention, however, is not entirely accurate.  Plaintiff did indicate that she could only lift "about 25 pounds."  Plaintiff did not, however, indicate why she was so limited, and when the ALJ then asked her if she could use her hands, she testified that she could not, because of arthritis.  Thus, even accepting as true Plaintiff's contention that she could only lift 25 pounds, it is unclear whether she was so limited because of her glaucoma or her arthritis.  (*See* TR 46.)

11

The ALJ acknowledged that this was the last available medical record before Plaintiff's date last insured, but she continued her analysis by looking at Plaintiff's appointment records from October 2002, December 2002, August 2003, March 2004, April and June 2008, and September 2009.  (TR 23.)  The ALJ noted that through at least 2003, Plaintiff's visual acuity was "about the same" and that in both August 2003 and March 2004 "[i]t was noted that she 'drives,'" even though Plaintiff testified that she hadn't driven since 1999.  (*See* TR 23.)  The ALJ found that by April 2008, Plaintiff's records indicated that she was experiencing headaches and dizziness, that her vision was worsening, and that her driving ability was "limited."  (TR 23.)  The ALJ found that "[r]egarding the headaches alleged at the hearing, there is no documentation of treatment for recurring headaches through the date last insured.  The only medically determinable impairment documented from January 1, 1999, through June 30, 2002, is chronic open angle glaucoma."  (TR 23-24.)  In her instant Motion, Plaintiff fails to point to any records that the ALJ may have overlooked or failed to consider.  Therefore, the Court finds that the ALJ's analysis was sufficiently specific to make clear to Plaintiff and the Court the weight she gave to the Plaintiff's statements and the reasons for that weight.

### 4.    Additional Hazards to Plaintiff

Plaintiff asserts that the ALJ failed to consider that (1) "a janitorial position may . . . occasionally subject [Plaintiff] to climbing ladders and stairs;" (2) "a stock clerk position may . . . require [Plaintiff] to read, bend at the knees, and crouch;" and (3) "a car-cleaner position may . . . subject her to dangerous hazards – she could walk right into the pointed end of an open car door!" (Docket no. 9 at 10-11.)  But the VE testified that someone who matched the ALJ's hypothetical scenario could perform work in these positions.  And "'nothing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to

12

determine if they are correct.'"  *Wilson v. Comm'r*, No. 10-13828, 2011 WL2607098, *6 (E.D.

Mich. July 1, 2011) (Cohn, J.) (quoting *Martin v. Comm'r*, 170 F. App'x 369, 374 (6th Cir. 2006)).

Plaintiff, through her attorney, had a full and fair opportunity to cross examine the VE and chose

not to do so.  Moreover, Plaintiff's argument assumes that such hazards are inherent in these

position, but she provides no support for these assumptions.  Thus, Plaintiff's argument fails.


## VI.     CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Summary Judgment (docket no. 9)

should be DENIED, and Defendant's Motion for Summary Judgment (docket no. 11) should be

GRANTED.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and

Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for

in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections

constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard*

*v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638

F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with

specificity will not preserve all objections that a party might have to this Report and

Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991);

*Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to

Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of*

*Michigan*, a copy of any objection must be served upon this Magistrate Judge.

13

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: September 9, 2013          s/ Mona K. Majzoub
                                  MONA K. MAJZOUB
                                  UNITED STATES MAGISTRATE JUDGE



## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: September 9, 2013          s/ Lisa C. Bartlett
                                  Case Manager